Filed 2/18/26  In re T.O. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re T.O., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>T.C.,<br><br>      Defendant and Appellant. | A174055<br><br>(Alameda County<br>Super. Ct. No. JD03708801) |

T.C. (mother) appeals from the juvenile court's order terminating her parental rights as to her son, T.O., following a Welfare and Institutions Code section 366.26 hearing.[1]  Mother contends that the Alameda County Social Services Agency (Agency) violated the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law (§ 224 et seq.) by not asking a maternal aunt and uncle whether T.O. might be an Indian child

---

[1] All further statutory references are to the Welfare and Institutions Code.

1

even though the Agency did ask mother and the maternal grandmother.[2]  We disagree and affirm.

## BACKGROUND[3]

Following mother's arrest on January 14, 2024, the Agency removed T.O., then 17-months old, from her care and placed him in protective custody. The Agency filed a petition under section 300, subdivision (g) (petition), alleging that:  (1) mother was arrested while T.O. was in her care and was unable "to identify another safe adult who could care for" him; and (2) "[t]he identity, whereabouts, and willingness and ability of" T.O.'s "father to parent him are unknown."  The ICWA-010(A) form attached to the petition indicated that the Agency asked the maternal grandmother about T.O's "Indian status" and had "reason to believe" he "is or may be an Indian child."  The Detention Report, however, stated that "the maternal grandmother informed" the Agency on January 14 "that the family does not have Native American ancestry."  The report also noted that mother "does not know who the biological father of [T.O.] is."  On January 18, the juvenile court detained T.O. and vested the Agency with "[t]emporary care, custody, and placement of" him.

In its Jurisdiction/Disposition Report, the Agency recommended that the juvenile court find the allegations in the petition to be true and declare T.O. a dependent of the court.  As to T.O.'s ICWA status, the Agency wrote that the maternal grandmother "informed" it "the family does not have

---

[2] Because "both federal and state law uses the term 'Indian,' " we adopt the approach taken by our high court in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*) and "use the term 'Indian' to reflect the statutory language."  We, however, "keep the terminology used by" the Agency and "various courts when quoting from their [reports and] opinions."  (*Ibid.*)

[3] We only include facts relevant to the ICWA issue raised on appeal.

Native American ancestry" and that mother "denied any knowledge of any Native American ancestry." It also noted that T.O. "was placed in the home of the maternal grandmother . . . ."

At the jurisdictional hearing on April 24, 2024, mother appeared and objected to the Agency's recommendation but presented no evidence. After being sworn in, mother told the juvenile court that she was not aware of any "Native American or American Indian ancestry" in her "family." She also told the court that there were two possible fathers—one with the first name or nickname of "Doughboy" or "Doeboy" and the other with the first name of "Nyzier" or "Nassir." At the end of the hearing, the court found that the allegations of the petition were true and declared T.O. a dependent of the court. The court "removed" T.O. "from [the] physical custody of" mother and approved his placement with "an approved relative."

In its October 14, 2024 Status Review Report, the Agency recommended terminating reunification services and setting a section 366.26 hearing. It noted that "[t]he identity and whereabouts of the alleged father . . . [were] unknown" and that the whereabouts of mother were unknown. The Agency also concluded that ICWA did "not apply" based on the prior denials of Indian ancestry by mother and the maternal grandmother.

By December 10, 2024, the date of the jurisdictional hearing, the Agency still had not located mother. As a result, she did not appear at the contested hearing, where the juvenile court terminated reunification services and set a hearing to terminate mother's parental rights under section 366.26.

The 366.26 WIC Report (Report) recommended terminating mother's parental rights. The Report initially stated that T.O. was placed with his maternal aunt. But the remainder of the Report repeatedly identified the maternal grandmother as T.O.'s "caregiver." As for additional family

3

members, the Report only identified a maternal aunt who "live[d] on [her] own" and a 19-year old maternal uncle and a maternal aunt, who was still a minor, who both lived with the maternal grandmother.  The Report further noted that the Agency had "no information as to the whereabouts of any" grandparents other than the maternal grandmother.

As for ICWA, the Report reiterated that the maternal grandmother had denied any "Native American ancestry" on January 14, 2024, that mother had done the same on January 18, and that "[t]he father's identity is unknown."  On this basis, the Report asked the juvenile court to find that ICWA "does not apply."

At the section 366.26 hearing on April 9, 2025, mother did not appear.  Her counsel objected to the Agency's recommendation but presented no evidence.  The juvenile court found that "ICWA does not apply."  It then terminated the parental rights of mother and "any unknown father."  Mother timely appealed from the court's April 9 order terminating her parental rights.[4]

## DISCUSSION

### A.    Standard of Review

In *Dezi C.*, *supra*, 16 Cal.5th at page 1134, our high court left unresolved the "standard of review" applicable to a juvenile court's finding that "ICWA does not apply."  But the high court did establish that, when

---

[4] Although mother filed her Notice of Appeal on May 6, 2025, we did not receive it from the juvenile court until August 18, 2025—over three months later.  As a result, the briefing was not completed until January 8, 2026, making it impossible for us to resolve this appeal by the 250-day target date of January 12, 2026.  (See Cal. Rules of Ct., rule 8.416(e)(1) ["To permit determination of the appeal within 250 days after the notice of appeal is filed . . . ."] & (h)(1) ["counsel must serve and file any request for oral argument no later than 15 days after the appellant's reply brief is filed or due to be filed"].)

reviewing that finding, the threshold issue is whether the child welfare agency conducted a proper and adequate inquiry into the child's Indian ancestry. (*Id.* at p. 1136.) This is because, absent such an inquiry, "it is impossible to ascertain whether the agency's error is prejudicial." (*Ibid.*) As a result, any "error resulting in an inadequate initial . . . inquiry requires conditional reversal with directions for the . . . agency to comply with the inquiry requirement . . ., document its inquiry . . ., and when necessary, comply with the notice provision . . . ." (*Ibid.*) Our high court then established "that the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.)

If the child welfare "agency's inquiry and due diligence were 'proper and adequate,' " then the issue becomes whether "the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) A juvenile court's finding on this issue is presumably reviewed "for substantial evidence." (See *In re C.R.* (2025) 112 Cal.App.5th 793, 800 (*C.R.*) ["We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence"].) Indeed, "there is no error" if the "court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation." (*Dezi C.*, at p. 1141.)

### B. Analysis

Mother contends that the Agency's inquiry was inadequate because it did not ask a maternal aunt and uncle about T.O.'s Indian ancestry. But the Agency did ask the maternal grandmother. Thus, the juvenile court did not abuse its discretion in finding that the Agency's inquiry was adequate

because the maternal aunt and uncle were unlikely to know more about their family's Indian ancestry than the maternal grandmother. Because the Agency's inquiry was adequate, the unequivocal denials of Indian ancestry by mother and the maternal grandmother are sufficient to support the court's conclusion that ICWA does not apply.

ICWA formalizes " 'federal policy relating to the placement of Indian children outside the family home' " and "establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1124–1125, 1129.) The Legislature adopted section 224.2 to "codif[y] and expand[ ] on ICWA's duty of inquiry to determine whether a child is an Indian child." (*Dezi. C.*, at p. 1131.) Specifically, section 224.2 imposes "an affirmative and continuing duty" on juvenile courts and child welfare agencies "to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a).) As relevant here, that "[i]nquiry includes . . . asking the . . . extended family members . . . whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2); see also *Dezi C.*, at p. 1125.)

Despite this statutory language, a child welfare agency is not required to ask "every possible extended family member . . . about the child's Indian ancestry." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) Instead, the agency only has a duty to ask " 'those people who are *reasonably available to help the agency with its investigatio*n into whether the child has any potential Indian ancestry.' " (*Id.* at p. 1140, italics added.) Thus, the agency's duty of inquiry is " 'slight and swift.' " (*Id.* at p. 1143.)

Consistent with this limited duty of inquiry, a child welfare agency need not ask a "maternal aunt" or a "maternal cousin about" a child's "Indian ancestry" if the agency has already asked the "maternal grandmother."

6

(*C.R.*, *supra*, 112 Cal.App.5th at p. 802.) Likewise, an agency need not ask "the maternal uncle" if it has already asked "the maternal grandmother." (*In re C.L.* (2025) 116 Cal.App.5th 53, 70 (*C.L.*).) This is because " 'younger generations lack[ ] knowledge of their Native American ancestry' " due to "forced assimilation policies." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1139.) Indeed, older " 'generations who lived through trauma at the hands of state actors pass a lack of self-identification as Native Americans to younger generations.' " (*Id.* at p. 1146.) Thus, absent "any indication" that an extended family member "would have more information than" his or her parents, an agency may forego asking that family member about a child's Indian ancestry if it has already asked the member's parents. (*C.L.*, at p. 70.) In that circumstance, "[t]he law of diminishing returns is at work." (*In re K.G.* (2025) 117 Cal.App.5th 379, 385.)

Here, the Agency asked mother and the maternal grandmother about T.O's Indian ancestry. Thus, it had no duty to ask the maternal aunt and uncle as well unless there was some reason to believe that they had more information about T.O.'s ancestry than the maternal grandmother (their mother) or mother.[5] (See *C.L.*, *supra*, 116 Cal.App.5th at p. 70; *C.R.*, *supra*, 112 Cal.App.5th at p. 802.) Mother identifies no such reason, and our review of the record reveals none.[6] Accordingly, the juvenile court did not abuse its discretion when it implicitly concluded that the maternal aunt and uncle would not "help the agency with its investigation into whether the child has any potential Indian ancestry." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.)

---

[5] The Agency had no information about the whereabouts of the maternal grandfather.

[6] This is especially so for the maternal uncle, who was only 19 years of age and still lived with the maternal grandmother at the time.

7

*In re Claudia R.* (2025) 115 Cal.App.5th 76 (*Claudia R.*) does not compel a contrary conclusion. In *Claudia R.*, the child welfare agency "made no effort to contact the maternal grandfather, with whom [the] [m]other 'occasionally' had contact," and therefore "had no information on [the] [m]other's paternal ancestry (other than from [the] [m]other)." (*Id.* at p. 89.) The agency also failed to take obvious steps to find the paternal grandfather. (*Ibid.*) The Court of Appeal therefore concluded that the agency "fell far short of [its] duty of inquiry." (*Id.* at p. 90.) By contrast, the Agency in this case did not leave any reasonably available avenues for discovering T.O.'s ancestry unexplored. Indeed, the Agency could not explore T.O.'s paternal ancestry because mother provided no way to identify his father. The Agency also could not explore the mother's paternal ancestry (aside from asking the maternal grandmother), because it had no information about the whereabouts of the paternal grandfather. Thus, unlike *Claudia R.*, the juvenile court in this case could reasonably conclude that the unquestioned relatives lacked any additional information about T.O.'s Indian ancestry.

Because the juvenile court properly found that the Agency's inquiry was proper and adequate, the unchallenged denials of Indian ancestry by mother and the maternal grandmother are sufficient to support the juvenile court's conclusion that ICWA does not apply.

## DISPOSITION

The April 9, 2025 order terminating mother's parental rights is affirmed.

CHOU, J.

We concur.

JACKSON, P. J.

SIMONS, J.